The Commonwealth of Massachusetts
Middlesex Sheriff's Office
Civil Process Division
400 Mystic Ave., 3rd Floor
2200139 Medford, MA 02155

MARK HALEY
8 PINE Street
BELMONT, MA 02478

*1*

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT DEPARTMENT

CIVIL ACTION *22- 0253A*

|  |  |
|---|---|
| RENE FLORES | ) |
|  | ) |
| PLAINTIFF | ) |
|  | ) |
| v. | ) |
|  | ) |
| MARK HALEY, DOES 1-10, INCLUSIVE, | ) |
| ABC INC. 1-10, INCLUSIVE | ) |
|  | ) |
| DEFENDANT | ) |

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE
2022 FEB -2 P 1 20
MICHAEL JOSEPH DON...
CLERK / MAGISTRATE

## <u>COMPLAINT AND DEMAND FOR TRIAL BY JURY</u>

This is a civil action for damages sustained by the Plaintiff for breach of contract as well as

fraudulent representation as well as other torts and causes of action complained of herein thereby

giving rise to the instant complaint and in support thereof as follows:

## <u>THE PARTIES</u>

1. Plaintiff, Rene Flores, is the Plaintiff in the instant action with an address of 27 Herrick Road,

Newton, MA 02459 at all times relevant to this complaint.

2. Defendant, Mark Haley,, is the Defendant in the instant matter doing business at the address of

8 Pine Street, Belmont MA 33301.

**JURISDICTION AND VENUE**

3. Jurisdiction is properly conferred by G.L. c. 212, § 4 and c. 223A § 2 and 3.

4. Venue is proper under G.L. c. 223 § 1 as all matters complained of have taken place within the

instant district.

**STATEMENT OF FACTS**

5. The Plaintiff met Mr. Haley at the Oakley Country Club where he was employed as a

supervisor at the banquet department. It was through him that the Plaintiff was hired as a banquet

server by the Oakley Country Club approximately four years ago and ended up building a

friendship with Mr. Haley, the Plaintiff's immediate supervisor at the club.

6. Mr. Haley opened about working in California for several years purchasing and selling

companies and that his work at the country club was temporary because he wanted to create an

importing company and reach a point that he would be able to sell it for $50,000,000.00 ($50

Million U.S. Dollars).

7. A couple of months after meeting Mr. Haley, he was fired by the country club. After his firing,

The Plaintiff and Defendant ended up staying in touch on a regular basis until one day we met at

Harvard Square where the Defendant made an offer to the Plaintiff to work for him at Boyaca T

reading Company, L.L.C. with an address of 8 Pine Street, Belmont, MA 02478.

8. The job offer entailed finding and selling products such as plantains, tomatoes, and other

products from Mexico, Costa Rica, Columbia, Honduras, and other regions as needed.

9. The Plaintiff and Defendant agreed that the Defendant was going to start working for Boyaca Trading Company on February 8, 2018.

10. The salary that was agreed upon for the job the Plaintiff was to perform was $1,800.00 per week due to the nature of the position which required me to be on stand-by to receive containers that his employee in Columbia, Andres Cardona, was to send to the United States. Such containers had to be delivered to their owners here in the United States.

11. During that time the Plaintiff was working for Boyaca Trading Company, L.L.C., Mr. Haley committed serious mistakes including but not limited to the following: (1) Not having insurance on the containers that were brought to the United States and (2) Lack of proper planning and logistics when the produce arrived, causing merchandise to arrive damaged and not able to be sold for human consumption.

12. What would then happen is that he would leave the merchandise on consignment to see if there was any possibility to recuperate any of the sales of the damage produce to then use to cover my travel expenses such as going to Columbia, Honduras, Rhode Island, Connecticut, New York, Philadelphia, and New Jersey; reimbursement that was never given to the Plaintiff despite is effort and labor to receive and deliver the products in the instant matter.

13. The only other option besides recuperation of the sales was to find a company who would dispose of the entire container and pay them between $6,000.00 to $8,000.00 per container.

14. Mr. Haley chose to leave the damaged produce with buyers on consignment instead of having the produce disposed of. Money was indeed recuperated, which I deposited to Mr. Haley's TD

Bank account in Revere, MA twice, and once at TD Bank in Chelsea MA, once at TD Bank in

Back Bay, and a wire transfer to Mr. Haley's TD Bank account.

15. There are inspection reports from the USDA confirming that the tomato and plantain

products were 80% to 90% damaged.

16. Due to repeated mistakes and damaged produce, a moment was reached where no buyers

wanted to take the containers.

17. The Plaintiff called Mr. Haley and informed him that there was a big problem and that

he would have to find someone who would pick up and dispose of the containers because the

buyers did not want the produce and were requesting to be paid for the disposal of the damaged

products.

18. The buyers stated that Mr. Haley and his employees in Columbia did not engage in the

proper procedures with the freight companies which resulted in the produce getting damaged.

19. Mr. Haley has not paid any of my salary in the amount agreed upon. The Plaintiff has

not been paid a single penny for all of the work that has been done for Boyaca Trading Company,

L.L.C. in addition to my travel expenses, which the Plaintiff has not been reimbursed either.

20. The Plaintiff confronted Mr. Haley, the owner of Boyaca Trading Company, L.L.C.

demanding payment of salaries and travel expenses.

21. Mr. Haley kept saying that all of the accountants that he has are visiting other businesses and

that he will take care of the situation.

22. The last time that the Plaintiff confronted Mr. Haley, he said that he understood he hasn't paid the Plaintiff any salary or reimbursed the Plaintiff's travel expenses and that he was willing to give me 50% of the company for all of the work and for traveling expenses that I have incurred while working for Boyaca Trading Company, L.L.C..

23. The Plaintiff replied that the proposition made by Mr. Haley was not what we had agreed upon and demanded payment of salaries and travel expenses for work starting from February 2018 to September 24, 2021 which is the time period that I have worked for Boyaca Trading Company, L.L.C.

24. Based on the facts above, the Defendant has engaged in a breach of contract resulting in damages as well as violation of both state and federal labor laws in addition to fraudulent and / or negligent misrepresentation on numerous occasions, thereby giving rise to the instant complaint.

25. Based on the facts boave, the Plaintiff is hereby requesting payment for unpaid salaries in the amount of $234,000.00 in addition to travel expenses in the amount of $58,000 resulting in a total amount of $292,000. Furthermore, the Plaintiff is seeking punitive damages anywhere between three to ten times the amount of compensatory damages ranging anywhere from $876,000 to $2,920,000 with all facts disputed to be determined in a trial by jury.

## COUNT I

## BREACH OF CONTRACT

26. The Plaintiff hereby references and incorporates Paragraphs 1 through 25 as though set forth herein at length.

27. "Under Massachusetts law, a breach of contract claim requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013), citing Singarella v. City of Bos., 342 Mass. 385, 387 (1961). At a minimum, the plaintiff must "explain what obligations were imposed on each of the parties by the alleged contract." Buck v. Am. Airlines, Inc., 476 F.3d 29, 38 (1st Cir. 2007), quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996).

28. In the instant matter, (1) a valid and affirmative contract indisputable existed between the parties and is evidenced by the performance of labor on numerous occasions referenced herein.

29. The element of performance is present as well as the labor has already taken place.

30. The Defendant is clearly in breach of the contract having admittedly not provided compensation for the wages and travel expenses in this is further evidenced by the Defendant's offer to exchange 50% of the company in exchange for these unpaid wages and expenses, which was affirmatively denied by the Plaintiff

31. Lastly, the Plaintiff suffered damages as a result of the breach as follows: unpaid salaries in the amount of $234,000.00 in addition to travel expenses in the amount of $58,000 resulting in a total amount of $292,000.

32. Based on the facts boave, the Plaintiff is hereby requesting payment for unpaid salaries in the amount of $234,000.00 in addition to travel expenses in the amount of $58,000 resulting in a total amount of $292,000.

## COUNT II

## VIOLATION OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 203. Et. Seq.

33. The Plaintiff hereby references and incorporates Paragraphs 1 through 25 as though set forth herein at length.

34. Under federal law, employers who fail to pay proper wages may be liable for up to double the amount of unpaid back wages plus costs and attorney's fees incurred by employees. These cases can be brought by pay lawyers on a class or collective basis on behalf of all workers who were subjected to the same illegal pay practices. Employers who willfully or repeatedly violate the minimum wage or overtime pay requirements are subject to a civil money penalty of up to $1,000 for each such violation. Willful violations of the FLSA may result in criminal prosecution and the violator fined up to $10,000. A second conviction may result in imprisonment.

35. This provision of the Fair Labor Standards Act was violated both with regards to the federal law and the state law, thereby giving rise to the instant claim.

36. Mr. Haley's practice of willfully failing or refusing to pay me at the required minimum wage rate violates the FLSA, 29 U.S.C. § 206(a).

37. Defendants willfully failed or refused to pay Plaintiff any wages whatsoever for any of the hours that Plaintiff worked for them during the entire duration of my employment.

38. Therefore, Mr. Haley's conduct expressly violates the Fair Labor Standards Act, 29 U.S.C. § 206(a), and the Plaintiff is entitled to compensation for the full applicable minimum wage at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages,

together with interest, reasonable attorney's fees, and costs under this law specifically.

## COUNT II

### VIOLATION OF MASSACHUSETTS MINIMUM WAGE LAW MGL C. 149 § 148

39. The Plaintiff hereby references and incorporates Paragraphs 1 through 25 as though set forth herein at length.

40. MGL c.149 § 148 Weekly wage law. Provides details of how wages must be paid. Includes the following about employees who leave their employment: "any employee leaving his employment shall be paid in full on the following regular pay day, and, in the absence of a regular pay day, on the following Saturday; and any employee discharged from such employment shall be paid in full on the day of his discharge..."

41. MGL c.149, § 150 Provides for mandatory triple damages for weekly wage law violations.

42. The Wage Act, MGL c.149, § 148, "says what it means and means what it says... An employee who does not receive her due wages by [the day of her discharge] - even an employee who is paid in full a day later - suffers a cognizable injury within the purview of the statute."

43. Defendants willfully failed or refused to pay Plaintiff any wages whatsoever for any of the hours that Plaintiff worked for them during the entire duration of my employment.

44. Therefore, Mr. Haley's conduct expressly violates the The Massachusetts Wage Act, MGL c.149, § 148, , and the Plaintiff is entitled to compensation for the full applicable minimum wage at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs under this law specifically.

## COUNT IV

## FRAUDULENT REPRESENTATION WITH THE INTENT TO DECEIVE

45. The Plaintiff hereby references and incorporates Paragraphs 1 through 25 as though set forth

herein at length.

46. "To establish a claim for fraud under Massachusetts law, a plaintiff must prove that 'the

defendant made a false representation of material fact with knowledge of its falsity for the

purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the

representation as true and acted upon it to his damage.'" Taylor v. Am. Chemistry Council, 576

F.3d 16, 31 (1st Cir. 2009), quoting Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458

(2002). To sustain a claim of negligent misrepresentation, a plaintiff need not show that a

defendant knew the statement to be false, but must show that the defendant failed "to exercise

reasonable care or competence in obtaining or communicating the information." Nota Constr.

Corp. v. Keyes Assocs., Inc., 45 Mass. App. Ct. 15, 20 (1998).

47. During the time of the incidents of unpaid wages referenced in the instant matter, it was

discovered that Mr. Haley had taken out a Covid-19 business loan which the primary purpose

thereof was to compensate unpaid employees. Mr. Haley took out this Covid-19 business loan

and still failed to compensate the Plaintiff the wages owed for unpaid wages and unpaid travel

expenses.

48. Mr. Haley had, in fact, told the Plaintiff that he was waiting for his accountants to sort out the

matter, but this was a false and fraudulent representation in order to delay the Plaintiff from

being able to recover their wages in the instant matter. The fact that Mr. Haley had in fact taken out Covid-19 Business Loans and had funds available to pay the Plaintiff, but pretended that he was unable to do the same, constitutes false and fraudulent representation separate from the breach of contract complained of in the instant matter.

49. The unnecessary delay caused special damages to the Plaintiff in the form of being evicted from his home due to the lack of payment of wages which was specifically delayed by the false and fraudulent representations of Mr. Haley. In other words, had Mr. Haley been truthful, the Plaintiff could have initiated the instant action prior to suffering the hardship of eviction in order to prevent the same from taking place.

50. Mr. Haley's taking out of a loan to cover business expenses and then failing to compensate unpaid employees pursuant to the primary business of the Covid-19 business loan obtained constitutes fraudulent representation at the maximum and negligent misrepresentation at a minimum, both of which entitle the Plaintiff to recover damages against the Defendant for the same.

51. Based on the facts boave, the Plaintiff is hereby requesting payment for unpaid salaries in the amount of $234,000.00 in addition to travel expenses in the amount of $58,000 resulting in a total amount of $292,000. Furthermore, the Plaintiff is seeking punitive damages anywhere between three to ten times the amount of compensatory damages ranging anywhere from $876,000 to $2,920,000 with all facts disputed to be determined in a trial by jury in accordance with the law.

## COUNT V

## NEGLIGENT MISREPRESENTATION

52. The Plaintiff hereby references and incorporates Paragraphs 1 through 25 as though set forth

herein at length.

53. To sustain a claim of negligent misrepresentation, a plaintiff need not show that a

defendant knew the statement to be false, but must show that the defendant failed "to exercise

reasonable care or competence in obtaining or communicating the information." Nota Constr.

Corp. v. Keyes Assocs., Inc., 45 Mass. App. Ct. 15, 20 (1998).

54. 47. During the time of the incidents of unpaid wages referenced in the instant matter, it was

discovered that Mr. Haley had taken out a Covid-19 business loan which the primary purpose

thereof was to compensate unpaid employees. Mr. Haley took out this Covid-19 business loan

and still failed to compensate the Plaintiff the wages owed for unpaid wages and unpaid travel

expenses.

55. Mr. Haley had, in fact, told the Plaintiff that he was waiting for his accountants to sort out the

matter, but this was a false and fraudulent representation in order to delay the Plaintiff from

being able to recover their wages in the instant matter. The fact that Mr. Haley had in fact taken

out Covid-19 Business Loans and had funds available to pay the Plaintiff, but pretended that he

was unable to do the same, constitutes false and fraudulent representation separate from the

breach of contract complained of in the instant matter.

56. The unnecessary delay caused special damages to the Plaintiff in the form of being evicted

from his home due to the lack of payment of wages which was specifically delayed by the false

and fraudulent representations of Mr. Haley. In other words, had Mr. Haley been truthful, the

Plaintiff could have initiated the instant action prior to suffering the hardship of eviction in order

to prevent the same from taking place.

57. Mr. Haley's taking out of a loan to cover business expenses and then failing to compensate

unpaid employees pursuant to the primary business of the Covid-19 business loan obtained

constitutes fraudulent representation at the maximum and negligent misrepresentation at a

minimum, both of which entitle the Plaintiff to recover damages against the Defendant for the

same.

58. Based on the facts boave, the Plaintiff is hereby requesting payment for unpaid salaries in the

amount of $234,000.00 in addition to travel expenses in the amount of $58,000 resulting in a

total amount of $292,000. Furthermore, the Plaintiff is seeking punitive damages anywhere

between three to ten times the amount of compensatory damages ranging anywhere from

$876,000 to $2,920,000 with all facts disputed to be determined in a trial by jury in accordance

with the law.

## **JURY TRIAL DEMANDED**

59. The Plaintiff demands a trial by jury as to all facts triable.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff asks for judgment in their favor as follows:

A. Compensatory Damages in an amount to be determined in a trial by jury not less than $292.00

B. Punitive  damages in an amount to be determined in a trial by jury not less than three to ten times the amount of compensatory damages ranging from $876,000 to $2,920,000

C. Any and all other applicable relief.

Dated: January 21, 2022                                    Respectfully Submitted,